# United States Court of Appeals
# for the Federal Circuit

**IN RE GEA PROCESS ENGINEERING, INC.,**
*Petitioner.*

———————————

2015-125

———————————

On Petition for Writ of Mandamus to the United
States Patent and Trademark Office in Nos. IPR2014-
00041, IPR2014-00043, IPR2014-00051, IPR2014-00054,
IPR2014-00055.

———————————

## CONFIDENTIAL STEUBEN FOODS INC.'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Greg H. Gardella
OBLON McCLELLAND MAIER
 & NEUSTADT, L.L.P.
1940 Duke Street
Alexandria, Virginia 22314
Tel: (703) 413-3000
cpdocketgardella@oblon.com
*Attorneys for Steuben Foods, Inc.*

March 9, 2015

**Form 9**

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

In re: GEA PROCESS ENGINEERING, INC. v. _____

No. 15-125

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) respondent _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

Steuben Foods, Inc.

_____

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

_____

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

_____

4. ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Greg H. Gardella; Kevin B. Laurence; Michael L. Kiklis; and Ruby J. Natnithithadha
OBLON,  McCLELLAND, MAIER & NEUSTADT L.L.P.

_____

March 9, 2015                                  /s/ Greg H. Gardella
_____                          _____
        Date                                     Signature of counsel

                                               Greg H. Gardella
                                         _____
                                              Printed name of counsel

Please Note: All questions must be answered
cc: _____

# TABLE OF CONTENTS

I.   Introduction.................................................................................................1

II.  Statement of the Case ...............................................................................2

III. Argument ..................................................................................................6

   A. The PTAB Did Not Clearly Abuse Its Discretion in Finding that GEA's
   Failure to Properly List Its Sister Company Was Not a "Clerical or
   Typographical" Mistake ...........................................................................8

   B. The Board Did Not Clearly Abuse Its Discretion in Refusing to Grant
   Equitable Relief for a "Good Faith Mistake"...............................................10

   C. Rule 17(a)(3) Does Not Allow GEA Process Engineering To Update Its RPI
   Listing Without Changing Its Filing Date....................................................12

   D. The PTAB Plainly Has the Statutory Authority to Review its Own Decision
   on Institution and Determine Which Errors Can be Corrected Without the
   Assignment of a New Filing Date ...............................................................14

   E. The Board Did Not Clearly Abuse Its Discretion in Finding that GEA
   Procomac Was a Real Party-In-Interest ......................................................18

IV.  Conclusion ..............................................................................................23

# TABLE OF AUTHORITIES

## Cases

*ABB Inc., Roy-G-Biv Corp.*, IPR2013-00063, 2013 WL 6907728 (PTAB Jan. 16, 2013) ..................................................................................................13

*ABB*, 2013 WL 6907728 ...................................................................................14

*Advanced Micro Devices, Inc. v. LG Electronics, Inc.*, Case No. 14–cv–01012–SI, 2015 WL 545534 (N.D. Cal. February 9, 2015).......................................24

*Cheney v. United States District Court*, 542 U.S. 367 (2004)..............................11

*Dunmore v. U.S.*, 358 F.3d 1107 (9th Cir. 2004) ...............................................18

*In re Cuozzo Speed Techs., LLC,* No. 2014-1301, 2015 WL 448667 (Fed. Cir. Feb. 4, 2015) ................................................................................................21

*In re Dominion Dealer Solutions, LLC*, 749 F.3d 1379 (Fed. Cir. 2014) .............21

*In re Lovin*, 652 F.3d 1349 (Fed. Cir. 2011)....................................................13

*In re Procter & Gamble Co.*, 749 F.3d 1376 (Fed. Cir. 2014)............................22

*In re Share Memory Graphics, Inc.*, 659 F.3d 1336 (Fed. Cir. 2011)...................11

*Schneider v. Unum Life Ins. Co.*, 2008 WL 1995459 (D. Or. May 6, 2008) .........17

*Sharehold Representative Servs. LLC v. Sandoz Inc.*, 2013 WL 4015901 (S.D.N.Y. Aug. 7, 2013) .....................................................................17

*Target Corp. v. Destination Maternity*, IPR2014-00508, Paper No. 22 (PTAB Oct. 9, 2014) ........................................................................................20

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...........................................................26

## Statutes

§ 314(d) ...........................................................................................................22

35 U.S.C. § 312(a)(2)........................................................................................18

35 U.S.C. § 314(d) ............................................................................................21

35 U.S.C. § 315(e) ............................................................................................23

35 U.S.C. § 317 .................................................................................................20

35 U.S.C. § 6(c) ......................................................................................... 6, 19

35 U.S.C. 314(d) ...............................................................................................21

37 C.F.R. § 106 ...................................................................................................7

37 C.F.R. § 42.6(c).............................................................................................14

37 C.F.R. § 42.71 ...............................................................................................19

37 C.F.R. §42.104(c)............................................................................................7

**Other Authorities**

157 CONG. REC. S1326 (daily ed. Mar. 7, 2011) ....................................................24

18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice
 & Procedure §§ 4449, 4451 (2d ed. 2011)..........................................................26

**Rules**

77 Fed. Reg. 48,699 ................................................................................ 13, 14

Federal Rule of Civil Procedure 17(a)(3) ..............................................................17

Rule 106 ....................................................................................................14

Rule 106(b) ................................................................................................13

Rule 17(a)(3) ..............................................................................................18

Rule 42.104(c)............................................................................................13

Rule 42.71 ..................................................................................................19

## I.    Introduction

The issue before this Court is whether the Patent Trial and Appeal Board (the "PTAB" or "Board") clearly abused its discretion in: i) finding that GEA Process Engineering, Inc.'s ("GEA Process Engineering") listing of the real parties-in-interest was not a "typographical or clerical" mistake and thus could not be corrected without the assignment of a new filing date; and ii) declining to exercise its equitable powers to allow correction of the real party-in-interest identification without assignment of a new filing date. As the Board found, the record contains "overwhelming evidence" that GEA Procomac S.p.A. ("GEA Procomac") had ample opportunity to control the review proceedings initiated by its sister company and that any "mistake" was not made in good faith.   A907; AP922.

The alternative arguments advanced by GEA Process Engineering – that the Board does not have the discretion to review its own decisions and that even bad faith mistakes can be corrected without assignment of a new filing date – border on frivolous. The America Invents Act expressly provides that the Board may grant rehearing, which may of course lead to the reversal of the underlying decision. *See, e.g.,* 35 U.S.C. § 6(c).  Further to that statutory authority, the Board regularly reviews, and plainly has the discretion to reverse, institution decisions, as it did

here.    The America Invents Act also gives the Patent Office discretion to promulgate regulations which dictate when a filing date may be accorded.    *See, e.g.,* 37 C.F.R. § 106.    The Patent Office did so, and the regulations provide that corrections to a petition may be made while maintaining a filing date only if they are clerical or typographical in nature.    *See, e.g.,* 37 C.F.R. §42.104(c).    However, GEA Process Engineering did not even argue to the Board that its mistake was clerical or typographical.    GEA Process Engineering instead insists, in essence, that all failures to follow the rules – even if done in bad faith – must necessarily be correctible, while maintaining an original filing date.

## II.    Statement of the Case

This case arises from a patent infringement dispute between GEA Process Engineering and Steuben Foods Incorporated ("Steuben"). A1-14; AP1-AP14. Steuben filed suit in September 2012 against GEA Process Engineering and its sister company GEA Procomac.    *Id.*    GEA Procomac is the manufacturer of the machines in question, and GEA Process Engineering is the U.S. sales arm of GEA Procomac.    AS471; ASP471.    GEA Process Engineering and GEA Procomac are represented by the same attorneys in the district court litigation as well as the same in-house counsel.    A946; AP967.

GEA Process Engineering filed several *inter partes* review petitions seeking cancellation of certain claims of patents owned by Steuben Foods Incorporated

("Steuben").   Conspicuously, the petitions did not list GEA Procomac as a real party-in-interest even though, as between GEA Process Engineering and GEA Procomac, the latter bears the lion's share of the liability because GEA Procomac sold six of the seven machines named in the complaint without the assistance of GEA Process Engineering, which entity has denied knowledge of those sales. AS7; ASP7.

GEA Process Engineering essentially acts as GEA Procomac's alter ego with respect to GEA Procomac's aseptic bottle filling equipment within the United States with GEA Process Engineering acquiring Procomac, Inc., which existed solely to serve as a sales arm for GEA Procomac's aseptic bottling equipment in the United States. AS26, AS28, AS30, AS455-457; ASP26, ASP28, ASP30, ASP455-457.   Indeed, GEA Procomac and GEA Process Engineering share office space in Wisconsin.  AS1; ASP1.  Given this, it is hardly surprising that GEA Procomac suggested prior art for inclusion in the petitions for *inter partes* review. AS657-58 (*citing* AS493-494, AS510, AS529); ASP657-68 (*citing* ASP493-494, ASP510, ASP529).

In the *inter partes* review proceedings, GEA Process Engineering took the position that GEA Procomac was not a real party-in-interest. A907; AP922. GEA Process Engineering did so presumably for the purpose of leaving GEA Procomac free of the estoppel which arises from *inter partes* review proceedings.  Under

CONFIDENTIAL MATERIAL REDACTED

GEA Process Engineering's theory, GEA Procomac should have been free to litigate the validity of the patents in district court even if the petitions filed by GEA Process Engineering were unsuccessful.

Steuben sought discovery from GEA Process Engineering concerning the opportunity GEA Procomac had to control the *inter partes* review proceedings, which is directly relevant to whether GEA Procomac was a real party-in-interest to those proceedings. A902; AP917. "GEA did not admit that Procomac funded the IPR expenses, or produce the relevant discovery, until long after Steuben Foods alleged that Procomac was an RPI." A907; AP922.

The discovery GEA Process Engineering ultimately produced yielded "overwhelming evidence" that GEA Procomac had more than an ample opportunity to control the IPRs. A907; AP922. Indeed, the documents "revealed that [GEA] Procomac funded all the IPR expenses in these cases until May 2014 and that it had the opportunity to control GEA [Process Engineering]'s participation in these proceedings." *Id*. Included among the discovery were legal bills sent by Pillsbury Winthrop Shaw Pittman, LLP to GEA Process Engineering. AS73-AS454;  ASP73-ASP454.

CONFIDENTIAL MATERIAL REDACTED

████████████████████████████████████████████████

████████        *See, e.g.,* AS76, AS104, AS112, AS458; ASP76, ASP104, ASP112,

ASP458.

The Board issued termination orders dated December 23, 2014 in IPR2014-

00041, IPR2014-00043, IPR2014-00051, and IPR2014-000054 (the "Termination

Orders") based on two factual findings.  First, the Board found that the failure to

list all real parties-in-interest was not a "clerical or typographical" mistake which

could be corrected while maintaining the original filing date under its rules.  A905;

AP920.  Indeed, GEA Process Engineering insisted throughout its briefing that

GEA Procomac was not a real party-in-interest. A907; AP922.  Second, the Board

found that "the particular facts of this case do not warrant such equitable relief" as

might be appropriate to correct a good faith mistake.  *Id.*  The Board found that any

correction of the real parties-in-interest would trigger the assignment of a new

filing date, which would render the petitions statutorily barred under 35 U.S.C.

§315(b). A908; AP923.   The Board thus terminated the proceedings.   A909;

AP924.

GEA Process Engineering filed a petition for writ of mandamus urging that

the Board did not have the authority to review its own decision instituting trial.

GEA Process Engineering takes the position that even intentional bad faith

omissions of real parties-in-interest cannot be addressed by the Board after a

decision instituting trial. Petition at 9-19. GEA Process Engineering further asserts that all corrections of real parties-in-interest – likewise, even those arising from bad-faith acts or omissions – should not change the filing date. *Id*.

## III. Argument

The writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. United States District Court*, 542 U.S. 367, 380 (2004). "Only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." *Id*. Two conditions must be satisfied for a writ to issue. First, "a party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired." *In re Share Memory Graphics, Inc.*, 659 F.3d 1336, 1339 (Fed. Cir. 2011). Second, the party seeking the writ must establish "that the right to issuance of the writ is clear and indisputable." *Id*. Even when these prerequisites have been met, the Court still has discretion to deny issuance of the writ. *Id.*

Steuben agrees with GEA Process Engineering inasmuch as GEA Process Engineering has argued that no other means are available to it to challenge the Termination Orders.[1] Thus, the remaining question is whether the Board clearly

---

[1] Steuben notes the inherent contradiction in GEA Process Engineering's argument as GEA Process Engineering filed a notice of appeal with the Federal Circuit on February 24, 2015. AS487-489.

abused its discretion in finding that GEA Process Engineering's intentional failure to disclose GEA Procomac as a real party-in-interest could not be remedied without the assessment of a new filing date.

The Board did not clearly abuse its discretion in finding that GEA Process Engineering's listing of the real parties-in-interest was not a typographical or clerical mistake and thus could not be corrected without the assignment of a new filing date. Nor did the Board clearly abuse its discretion in refusing to exercise its equitable powers to allow correction of the real party-in-interest identification without assignment of a new filing date. Rather, the Board correctly found that its rules did not allow for the correction of GEA Process Engineering's alleged mistake in failing to name GEA Procomac as it was not a clerical or typographical error. Rather, GEA Process Engineering took the position in its briefing that its decision was intentional and correct. A907; AP922.

The remaining arguments made by GEA Processing Engineering are easily dismissed. The America Invents Act expressly provides the Board authority to review its own decisions and to promulgate regulations which dictate when an error may be corrected without the assignment of a new filing date. The Board also correctly found, based on substantial evidence, that GEA Procomac was a real party-in-interest due to its funding of, and control over, the IPRs.

**A. The PTAB Did Not Clearly Abuse Its Discretion in Finding that GEA's Failure to Properly List Its Sister Company Was Not a "Clerical or Typographical" Mistake**

As noted by the Board in its termination decision, the rules of practice before the PTAB allow for corrections of "clerical or typographical" mistakes in a petition for *inter partes* review while maintaining the original filing date. This is consistent with the Comments to the Final Rules, which make clear that "[t]here is no provision for allowing for the correction of a mistake that is not a clerical or typographical error in nature without a change in filing date." 77 Fed. Reg. 48,699. It is also consistent with Rule 42.104(c), which allows for the correction of a petition in the case of "typographical or clerical error." The Board has allowed for the correction of certain papers filed in *inter partes* review proceedings to address non-substantive mistakes. *See, e.g., ABB Inc., Roy-G-Biv Corp.*, IPR2013-00063, 2013 WL 6907728, at *7 (PTAB Jan. 16, 2013) (Paper 21). It is well-settled that the PTO is owed substantial deference when interpreting its own rules "unless that interpretation is plainly erroneous or inconsistent with the regulation." *In re Lovin*, 652 F.3d 1349, 1353 (Fed. Cir. 2011).

Rule 106 governs the assignment of filing dates. Rule 106(b) provides that "[w]hen a party files an incomplete petition, no filing date will be accorded, and the Office will dismiss the petition if the deficiency in the petition is not corrected within one month from the notice of incomplete petition." The Board has chosen

to interpret Rule 106 as permitting the assignment of a filing date where a petition is incomplete if the reason the petition is incomplete is the result of a clerical or typographical error. *See ABB*, 2013 WL 6907728 at *7; 77 Fed. Reg. 48,699. If the failure to file a complete petition does not result from a clerical or typographical error, then the petition should not be accorded a filing date.

The Board consistently applied that interpretation of Rule 106 in the IPR proceedings. For example, in IPR2014-00041, the PTAB accorded GEA Process Engineering a filing date of October 9, 2013. In the notice according the filing date, the PTAB noted that GEA Process Engineering had failed to affix an exhibit number to the lower right hand corner of the first page of Exhibit No. 1022, as was required by 37 C.F.R. § 42.6(c). A344; AP344. GEA Process Engineering was provided five business days to remedy the defect. The failure to affix an Exhibit number was apparently the type of clerical or typographical error that is permitted while according a petition a filing date, notwithstanding the petition's incompleteness for failing to comply with the rules. Conversely, the Board found that the intentional decision not to list GEA Procomac as a real party-in-interest was not the type of clerical or typographical error that could be committed while assigning the petition a filing date. A905-907; AP920-22. Accordingly, the petition should never have been accorded a filing date, which necessarily means that a new filing date would need to be assessed. Here, assigning a filing date

months after GEA's statutory bar date would have been futile, as the Board correctly found. A908; AP923.

Significantly, GEA Process Engineering did not even argue to the Board that its failure to list GEA Procomac was a "typographical or clerical error." Rather, in its briefing GEA Process Engineering "still assert[ed] that Procomac is not an RPI (Opp. 1) despite the overwhelming evidence of its relationship with GEA and these proceedings." A907; AP922. Given that GEA Process Engineering did not argue that the failure to list GEA Procomac as a real party-in-interest was a clerical or typographical mistake, that argument has been waived and the Board cannot be said to have abused its discretion in finding otherwise.

GEA Process Engineering warns of a scenario where *inter partes* review proceedings could be terminated based on a failure to comply with font size or spacing requirements. Petition at 16-18. However, inadvertently selecting the wrong font size or margin is a typographical error that could be corrected without the assessment of a new filing date under Rule 104(c), for example. An intentional failure to list a real party-in-interest is not.

## B. The Board Did Not Clearly Abuse Its Discretion in Refusing to Grant Equitable Relief for a "Good Faith Mistake"

GEA alternatively urged the Board to exercise its equitable powers to allow GEA to correct its identification of the RPIs without changing the filing dates of the Petitions. Petition at 16-18. The question therefore is whether the Board

clearly abused its discretion in declining to exercise its equitable powers to grant the relief requested by GEA Process Engineering.

The Board was well within its discretion in concluding that GEA Process Engineering did not make a "good faith mistake" and that given the particular facts of this case equity did not dictate allowing GEA to make the real party-in-interest correction without changing the filing dates. The Board found that during briefing on the issue GEA Process Engineering's assertion that GEA Procomac was not a real party-in-interest was belied by "the overwhelming evidence of its relationship with GEA [Procomac] and these proceedings." A907; AP922. The Board found that evidence showed that "[GEA] Procomac funded all of the expenses of the instant proceedings until May 2014." A891; AP906. "[GEA] Procomac's funding of the IPR expenses starting with the GEA[Process Engineering]/Procomac invoice dated October 23, 2013, a mere two weeks after the petitions were filed on October 9 and 10, 2013, speaks to the relationship between [GEA] Procomac and GEA [Process Engineering], and these proceedings, at the time of the filing of the petitions." A898; AP913. The Board did not find GEA Process Engineering's claim of an "invoicing mistake" to be credible. The Board found that it was "telling" that GEA Process Engineering's sole declarant "[did] not aver that any employee of [GEA] [Process Engineering] ever issued or received instructions to the effect that [GEA] [Process Engineering] should be bearing the costs of the

review proceedings." A899; AP914. The Board further found that "the totality of the circumstances persuades us that there was no discernible boundary between GEA [Process Engineering] and [GEA] Procomac in relation to these proceedings, providing [GEA] Procomac ample opportunity to control GEA's participation in these proceedings." A900; AP916.

The Board's decision to invoke its equitable powers is, of course, within its discretion. Here, the Board's refusal to invoke those equitable powers was premised on numerous, well-supported findings of fact. The Board cannot be said to have clearly abused its discretion in declining to exercise its equitable powers.

## C. Rule 17(a)(3) Does Not Allow GEA Process Engineering To Update Its RPI Listing Without Changing Its Filing Date

GEA Process Engineering argues that Federal Rule of Civil Procedure 17(a)(3) should apply at the PTAB to allow the correction of a real party-in-interest to relate back to the original petition filing date. Even assuming that Rule 17(a)(3) did apply to IPRs at the PTAB, Rule 17(a)(3) only allows relation back to cure prudential, not constitutional standing defects. *Schneider v. Unum Life Ins. Co.*, 2008 WL 1995459, at *3-4 (D. Or. May 6, 2008); *Sharehold Representative Servs. LLC v. Sandoz Inc.*, 2013 WL 4015901, at *8 (S.D.N.Y. Aug. 7, 2013).

Constitutional standing "requires that a plaintiff suffered an injury in fact that is fairly traceable to the defendant and that a favorable decision could redress." *Schneider v. Unum Life Ins. Co.*, 2008 WL 1995459 at *3 (D. Or. May 6, 2008). If

12

the plaintiff lacks constitutional standing, then the suit cannot be considered as a case or controversy and the Article III court lacks subject matter jurisdiction to consider the suit. *Id*. Prudential standing "requires that a plaintiff assert his or her own legal interests as a real party-in-interest. *Id*. Where a plaintiff lacks prudential standing, the court is not robbed of subject matter jurisdiction. *Id*. Rather, the lack of prudential standing can be cured under Rule 17(a)(3). *Id*. However, a lack of prudential standing can only be cured under Rule 17(a)(3) where the failure to name a real party-in-interest is the result of "an understandable mistake and not a strategic decision." *Dunmore v. U.S.*, 358 F.3d 1107, 1112 (9th Cir. 2004).

The real party-in-interest requirement is akin to a jurisdictional standing requirement as the petition cannot be considered unless all real parties-in-interest are disclosed. 35 U.S.C. § 312(a)(2) ("A petition filed under section 311 may be considered **only if** - … the petition identifies all real parties in interest…) (emphasis added). Thus, Rule 17(a)(3) is not available to cure such a defect. However, even assuming *arguendo* that the defect could be considered prudential, Rule 17(a)(3) is unavailable to cure the defect as the failure to list Procomac as a real party-in-interest was not an understandable mistake as explained above, but rather a strategic decision. Accordingly, Rule 17(a)(3) is unavailable to allow

GEA Process Engineering to cure its statutory deficiency without changing its original filing date.

### D. The PTAB Plainly Has the Statutory Authority to Review its Own Decision on Institution and Determine Which Errors Can be Corrected Without the Assignment of a New Filing Date

The America Invents Act expressly provides that the Board may review its own decisions.  In particular, 35 U.S.C. § 6(c) expressly grants the Board authority to conduct rehearings, which may of course lead to the reversal of the underlying decisions.  Section 6(c) provides:

> (c) 3-Member panels
>
> Each appeal, derivation proceeding, post-grant review, and inter partes review shall be heard by at least 3 members of the Patent Trial and Appeal Board, who shall be designated by the Director. Only the Patent Trial and Appeal Board may grant rehearings.

This statutory provision thus recognizes that the Board may grant requests to rehear, or review, its own prior decisions.

Consistent with this statutory authority, the Board promulgated 37 C.F.R. § 42.71, which provides that any party dissatisfied with a decision of the Board may request rehearing of that decision.  Rule 42.71 provides, in pertinent part:

> (d) Rehearing. A party dissatisfied with a decision may file a request for rehearing, without prior authorization from the Board. The burden of showing a decision should be modified lies with the party challenging the decision. The request must specifically identify all matters the party believes the Board misapprehended or overlooked, and the place where each

14

matter was previously addressed in a motion, an opposition, or a reply. A request for rehearing does not toll times for taking action. Any request must be filed:

(1) Within 14 days of the entry of a non-final decision or a decision to institute a trial as to at least one ground of unpatentability asserted in the petition; or

(2) Within 30 days of the entry of a final decision or a decision not to institute a trial.

Further to Rule 42.71, the Board regularly reviews its own decisions instituting trials. *See, e.g.*, *Target Corp. v. Destination Maternity*, IPR2014-00508, Paper No. 22 (PTAB Oct. 9, 2014). In some of those rehearings, the Board reverses its earlier decision. *See, e.g., Target Corp. v. Destination Maternity Corp.*, IPR2014-00508, Paper No. 28, (PTAB Feb. 12, 2015).

The America Invents Act also contemplates that the Board will sometimes review and reverse its decisions to institute trial in the event the parties settle. 35 U.S.C. § 317 expressly permits reversal of a trial institution in response to a settlement by the parties.

317. Settlement

(a)  In General. An inter partes review instituted under this chapter shall be terminated with respect to any petitioner upon the joint request of the petitioner and the patent owner, unless the Office has decided the merits of the proceeding before the request for termination is filed. If the inter partes review is terminated with respect to a petitioner under this section, no estoppel under section 315(e) shall attach to the petitioner, or to the real party in interest or privy of the petitioner, on the basis of that petitioner's institution of that inter partes review. If no

petitioner remains in the inter partes review, the Office may terminate the review or proceed to a final written decision under section 318(a).

GEA argues that institution decisions are "final and nonappealable" under 35 U.S.C. § 314(d) and therefore immune from any review by either the PTAB or Federal Circuit. 35 U.S.C. 314(d) states: "No Appeal. – The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." Section 314(d) clearly relates to appeal rights and does not, in any sense, suggest that a decision to institute an IPR is immune from **all** review. GEA argues that the terms "final" and "nonappealable" must have different meanings. They do. "Final" means final for appeal purposes, and "nonappealable" means that the decision cannot be appealed. In other words, the decision is final for appeal purposes – *i.e.*, not interlocutory, but cannot be appealed. That does not mean that it can never be reviewed. This Court's recent decision in *In re Cuozzo* confirms this.

In *Cuozzo*, this Court stated "that mandamus may be available to challenge the PTO's decision to grant a petition to institute IPR after the Board's final decision in situations where the PTO has clearly and indisputably exceeded its authority." *In re Cuozzo Speed Techs., LLC,* No. 2014-1301, 2015 WL 448667, at *4 (Fed. Cir. Feb. 4, 2015). In *Cuozzo*, the PTO argued that this Court's decisions in *In re Dominion Dealer Solutions, LLC*, 749 F.3d 1379 (Fed. Cir. 2014) and *In re*

*Procter & Gamble Co.*, 749 F.3d 1376 (Fed. Cir. 2014) preclude mandamus of a decision to institute trial. This Court explained that its prior decisions did no such thing as the two prior requests for writs of mandamus did not establish a clear and indisputable right to the requested mandamus. Instead, this Court explained that it "did not decide the question of whether the decision to institute a review is reviewable by mandamus after the Board issues a final decision or whether such review is precluded by § 314(d)." *Id.* Far from precluding all review of an institution decision, this Court expressly left open the possibility of mandamus where the PTAB had clearly and indisputably exceeded its authority in instituting trial.

Beyond lacking merit, GEA's argument, if accepted, would not change the result of the Termination Orders. GEA's argument is largely based on the clause in the PTAB's order that vacates the institution decisions. However, it was not necessary for the PTAB to vacate the institution decision to terminate the proceeding. Thus, even if GEA's requested relief were granted, it would not change the ultimate result. The proceedings would remain terminated. Mandamus should not be invoked to change the form but not the substance of a result at the PTAB.

From a policy perspective, GEA Process Engineering proposes a rule whereby the Board's institution decisions are completely immune from any review,

17

even by the Board itself.   Under GEA Process Engineering's proposed rule, any party who files a petition for *inter partes* review would have a simple course to avoid the statutory requirement that a petition list all real parties-in-interest: conceal evidence of a third party's participation until after institution, after which the statutory violation would be effectively cured.   That result would be inequitable and anomalous.   It also flies in the face of the statute and regulations, as discussed further below.

### E. The Board Did Not Clearly Abuse Its Discretion in Finding that GEA Procomac Was a Real Party-In-Interest

The statutory requirement that all real parties-in-interest be disclosed before a petition can be considered reflects the importance of the real party-in-interest requirement.   In the Termination Orders, the Board explained:

> The Board relies on petitioner's identification of the RPI to determine conflicts of interest for the Office, the credibility of the evidence presented in a proceeding, and standing of a party that previously has filed a civil action involving a patent for which an IPR is requested. The failure to identify all the RPIs impedes the Board's ability to determine whether a request for *inter partes* review is timely.   This is so because an IPR may not be instituted if the petition is filed more than one year after the date on which the petitioner, the RPI, or privy of petitioner is served with a complaint alleging infringement of the patent.   Further, the failure to identify the RPI impedes the Board's ability to determine whether the IPR may be barred under 35 U.S.C. § 315(a)(1), or whether an RPI or privy of the petitioner is estopped from requested review under 35 U.S.C. § 315(e).

A906; AP921.

Unlike font size and other ministerial requirements, the real party-in-interest requirement serves the important purpose of ensuring that all standing issues are thoroughly vetted. The standing and estoppel requirements are essential to the efficacy and efficiency of *inter partes* reviews. Indeed, those requirements were intentionally inserted to allow for an expeditious review at the PTO while seeking to avoid the problems inherent in the *inter partes* reexamination process that subjected patent owners to indefinite delays and serial attacks. 157 CONG. REC. S1326 (daily ed. Mar. 7, 2011) (statement of Sen. Sessions). The estoppel requirements have led district courts around the country to grant stay requests in deference to *inter partes* review proceedings. *See, e.g., Advanced Micro Devices, Inc. v. LG Electronics, Inc.*, Case No. 14–cv–01012–SI, 2015 WL 545534, at *5 (N.D. Cal. Feb. 9, 2015).

GEA alleges that the PTAB made three clearly erroneous findings of fact in its real party-in-interest analysis. However, none of the alleged errors alters the "totality of the circumstances" on which the Board's decision was based.

The first alleged error was the Board's suggestion that GEA Procomac was a party to ███████████████████. Petition at 22. However, the Board did not so hold. The Board rather held that ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████  A902; AP917.  GEA does not contest the correctness of this finding.

Petition at 22-24.  Instead, GEA Process Engineering argues that Procomac is no

different than any third party that had a right to file a joinder motion to join GEA

Process Engineering's petitions.  *Id*.  However, the focus is not on Procomac's

ability to join GEA Process Engineering's petitions.  ███████████████████

███████████████████████████████████████████████████████

████████.  GEA Process Engineering is correct that any third party could have filed

a joinder motion to join GEA Process Engineering's petitions.  ████████████████

███████████████████████████████████████████████████████

███████████

Moreover, GEA Process Engineering has not even attempted to explain how

this finding, if it was an error, would make the Board's finding clearly erroneous

based on the "totality of the circumstances."  Petition at 22-24; A900; AP915.

The second alleged factual error is the Board's finding that the

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████  Petition at 22.

Significantly, GEA Process Engineering does not contest that  ████████████████

20



. Petitioner fails to explain why this factor could not be considered by the Board in determining whether GEA was a real party-in-interest. Petition 22-24. To the contrary, it was entirely appropriate for the Board to consider this factor given the highly fact-dependent nature of the real party-in-interest query. *See generally Taylor v. Sturgell*, 553 U.S. 880 (2008); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure §§ 4449, 4451 (2d ed. 2011).

The last allegedly erroneous fact finding is ███████████████████

Petition at 24-25. Petitioner misreads the Board's termination order. The Board found that the ███████████ speaks to the closeness of the relationship between GEA Process Engineering and GEA Procomac with respect to the review proceedings, even assuming it was a ████████ that was ultimately refunded:

> GEA and Procomac were so closely aligned in relation to these proceedings that even the entities themselves did not fully appreciate they were separate and distinct entities, as demonstrated by the alleged ████████████████ . . . That a ████████ of that proportion could take place is evidence of the closely aligned relationship between [GEA] Procomac and GEA [Process Engineering].

A902; AP917.

21

CONFIDENTIAL MATERIAL REDACTED

The Board's finding that GEA was a real party-in-interest is supported by numerous factual findings which are not contested by GEA. The Board found that

> [t]he facts here do not present the situation where [GEA] Procomac and GEA [Process Engineering] are merely co-defendants with a mutual interest in the patentability of the Steuben Foods' patents. GEA [Process Engineering] and [GEA] Procomac are related companies, with a common parent, GEA Group. Steuben Foods alleges patent infringement by both GEA [Process Engineering] and [GEA] Procomac of all five patents at issue in these proceedings in the related district court case. GEA [Process Engineering] is represented in these proceedings by Pillsbury, which represents both GEA [Process Engineering] and [GEA] Procomac in the district court case. In addition, two in-house attorneys from GEA Group are designated as in-house legal representatives for both GEA [Process Engineering] and [GEA] Procomac under the protective order in the district court case. [GEA] Procomac also admitted in the related district court case to working with GEA [Process Engineering] to defend against the lawsuit. Ex. 2075 ("It is [GEA] Procomac's understanding that defense work done with [GEA Process Engineering] to defend against the present [related district court lawsuit] would not be considered indirect assistance in connection with [GEA's] discrete IPR proceedings"). . . .

A901-902; AP916-17.

Importantly, the Board noted that whether the funding was a ▮▮▮▮ or not was not dispositive of the real party-in-interest query:



> Even assuming GEA [Process Engineering] sent the invoices for the IPR expenses to [GEA] Procomac as a result of an ▮▮▮▮▮ ▮▮▮▮▮ [GEA] Procomac's opportunity to control GEA [Process Engineering]'s participation in the instant proceedings was increased during the time because it was the entity entirely funding the proceedings. . . . That a ▮▮▮▮ of that proportion could take place is evidence of the closely aligned relationship between [GEA] Procomac and GEA [Process Engineering].

CONFIDENTIAL MATERIAL REDACTED

*Id.* The Board thus found that the totality of the circumstances indicated that GEA Procomac was a real party-in-interest even assuming that the invoicing was indeed █████████.

Moreover, the Board correctly expressed substantial doubt as to whether the invoicing was a ██████████████. The Board found that the facts of this particular case did not warrant exercise of equitable discretion as might be the case in the event of a ██████████████ A907; AP922. The Board also considered GEA's contentions dubious in view of the "overwhelming evidence of its relationship with GEA and these proceedings." Lastly, the Board found it "telling" that Mr. Casto, the general counsel of Petitioner, "does not aver that any employee of [GEA] ever issued or received instructions to the effect that [GEA] should be bearing the costs of the review proceedings." A899; AP914.

## IV.  Conclusion

GEA Process Engineering has not carried its burden of showing that the Board clearly abused its discretion in finding that GEA Procomac was a real party-in-interest based on the totality of the circumstances. Petitioner did not even argue to the Board that the mistake was clerical or typographical, which may have entitled it to correct the real party-in-interest listing under the Board's rules while maintaining its filing date. Petitioner is left with the argument that that the Board clearly abused its discretion in refusing to exercise its equitable powers in this

case.  Petitioner has fallen far short of meeting that lofty burden; the Board's decision was well-reasoned and based on numerous factual findings in which Petitioner has shown no error.  GEA Procomac was, is, and remains a real party-in-interest.  Any update to GEA Process Engineering's petition to reflect that requires the assignment of a new filing date.

 Respectfully submitted,

                                                STEUBEN FOODS, INC.

Dated:  March 9, 2015                 /s/ Greg H. Gardella
                                                Greg H. Gardella
                                                OBLON,  McCLELLAND,
                                                 MAIER & NEUSTADT L.L.P.

                                                1940 Duke Street
                                                Alexandria, Virginia 22314
                                                Attorney for Respondent

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 9, 2015, this STEUBEN FOODS, INC.'S CONFIDENTIAL RESPONSE TO GEA PROCESS ENGINEERING, INC.'S PETITION FOR A WRIT OF MANDAMUS which was filed electronically using the CM/ECF system, was served by email and 2 copies served by first class mail on counsel for Petitioner GEA Process Engineering, Inc. as follows:

> William P. Atkins
> Benjamin L. Kiersz
> PILLSBURY WINTHROP SHAW PITTMAN LLP
> 1650 Tysons Boulevard
> McLean, Virginia 22102
> Tel: (703) 770-7900
> william.atkins@pillsburylaw.com
> benjamin.kiersz@pillsburylaw.com

> <u>/s/ Greg H. Gardella</u>

> Greg H. Gardella

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)

Counsel for Steuben Foods Inc.. certifies that the body of this brief, beginning with the "Introduction" on page 1 and ending with the last line of the "Conclusion" on page 28, contains 5,630 words, in compliance with Rule 32(a)(7)(B)(ii) of the Federal Rules of Appellate Procedure.

March 9, 2015                        /s/ Greg H. Gardella
                                     Greg H. Gardella
                                     Counsel for Steuben Foods, Inc.